C. WEST AND GLORIA CHURCHMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 485-75.   Filed August 8, 1977.

*Carl B. Shapiro,* for the petitioners.
*Gordon W. Cook,* for the respondent.

FORRESTER, *Judge:* Respondent has determined the following deficiencies in petitioner's Federal income taxes:

| Taxable year | Amount of deficiency |
|---|---|
| 1970 | $2,491.33 |
| 1971 | 1,053.00 |
| 1972 | 1,178.00 |

Concessions having been made, the sole issue presented for our decision is whether the artistic activities of petitioner Gloria Churchman were not engaged in for profit so that section 183[1] applies.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners C. West and Gloria Churchman, husband and wife, resided in Mill Valley, Calif., at the time they filed the petition herein. Petitioners filed a joint Federal income tax return for the taxable year 1970 with the Internal Revenue Service Center at Ogden, Utah. Their joint returns for the taxable years 1971 and 1972 were filed with the Internal Revenue Service Center at Fresno, Calif.

Petitioner C. West Churchman is employed as a professor at the University of California at Berkeley and he is also a lecturer, writer, and consultant. Petitioner Gloria Churchman (hereinafter Gloria or petitioner) is an artist who has been involved in artistic activities for 20 years. She mainly paints but also sculpts, designs, draws, and builds; writes short stories, poems, and songs, performs in films, and has recently made a film. In addition to an undergraduate degree, she has 2½ years of graduate work in psychology and 2½ years of work in art school. She has taught courses at San Francisco State College, at the University of California Extension, and the Mendocino Art Center as well as given numerous workshops independently of any institution. During the years

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954.

in issue, petitioner devoted a substantial amount of her time to her artistic activities and she held no other job except as a housewife. Petitioner does her artwork in a home studio which was built for that purpose.

In 1969, petitioner designed and ran a gallery where her work was shown and she sold a number of her posters at such gallery. During the period in question, petitioner exhibited her paintings and sculptures at least once a year at commercial galleries or other places where the public might see and purchase them. She has had one-woman shows at galleries in San Francisco and San Rafael, Calif. In the year prior to trial herein, petitioner had three shows. In addition, petitioner opens her home studio to the public at least once a year.

Petitioner maintains a mailing list of about 200 names of students, friends, customers of the art gallery which she ran, and members of organizations to which she belongs, including an art club. When she has a show petitioner sends an announcement of it to the people on such list. In addition, gallery shows are announced by the gallery through newspapers as well as the gallery's own mailing list.

Petitioner began making posters and books in order to make her work more available to the public and more profitable, and she went to galleries in New York and San Francisco seeking to have her work shown there but she was largely unsuccessful. Such galleries, however, encouraged petitioner to go on with her work in the hope that it might one day be shown. At the time of trial, she was working on a book in which much of the work that petitioner has done in the past 20 years will be reproduced and thereby made more available to the public.

Petitioner has sold some of her paintings and posters, including four which were bought by Marshall Fields & Co. of Chicago for use in their displays of interior decoration, a series of drawings, and a reproduction of one of her series of "self-portraits" for a book. At the time of trial, petitioner had six paintings for which she would ask $1,000, 10 for which she would ask $500, and another 20 or 30 for which she would ask $200, in addition to a film which is for sale and a number of original drawings.

One of petitioner's sculptures won first prize in the Richmond Art Show. A newspaper article was written about her, with pictures of her work, in 1972, and articles about her have also recently appeared in a number of women's publications. In 1973, she published a book of "stories, drawings and a few songs." Petitioner received a grant from the Demeter Project in San Francisco to do a film which she completed prior to trial and which was for sale at that time, and she was offered a job to be an art director and set designer for a feature-length movie to be made in New York. Also, in about 1973, she was represented at the Woman's Spirituality Conference in Boston.

Petitioner made occasional gifts of her work to friends and relatives. She was not dependent upon the sale of her artwork for her livelihood either at the time of trial or during the preceding 20 years.

Petitioner keeps a notebook in which she records what she has sold and to whom it was sold. Petitioner keeps receipts of her expenses. She does not keep a separate bank account for her artistic activities nor does she keep a record of the occasional gifts of her work to friends and relatives.

During the 20 years that petitioner has pursued her artistic activities, the income from the sale of her artwork has not exceeded her expenses in any year. Petitioner reported no art-related income whatsoever for the taxable year 1970 and 1971, but she reported $250 of such income for 1972.

On their 1970 return, petitioners claimed a $3,410 deduction for "studio and study office." Respondent allowed $650 of such amount as a deduction for "home office" expenses of petitioner C. West Churchman and disallowed the remainder. On their 1971 return, petitioners claimed a $3,120 deduction for "studio and study office" but again respondent allowed only $650. On their 1972 return, petitioners claimed a business loss in the amount of $1,172 ($250 gross receipts minus deductions totaling $1,422) from Gloria's artistic activities. Respondent disallowed the entire amount of such loss. The parties now agree that if petitioners establish that Gloria's art-related expenses are properly deductible, then the amount so deductible as a business loss from Gloria's artistic

activities in 1972 is $650 and a like amount is also deductible in both 1970 and 1971 as a home-studio expense.

### OPINION

Respondent argues that petitioner's artistic activities are not engaged in for profit so that section 183[2] applies and the claimed deduction of petitioner's art-related expenses is not allowable. Section 183 allows deductions for ordinary and necessary expenses arising from an activity not engaged in for profit only to the extent of the gross income derived from such activity less the amount of those deductions[3] which are allowable regardless of whether or not the activity is engaged in for profit. Petitioner, on the other hand, argues that her artistic activities were engaged in for profit so that her art-related expenses are deductible in full under sections 162 and 165.

---

[2] SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT.

(a) GENERAL RULE.—In the case of an activity engaged in by an individual or an electing small business corporation (as defined in section 1371(b)), if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

(b) DEDUCTIONS ALLOWABLE.—In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

(c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.—For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.

(d) PRESUMPTION.—If the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary or his delegate establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. In the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, the preceding sentence shall be applied by substituting the period of 7 consecutive taxable years for the period of 5 consecutive taxable years.

[3] Deductions of this type, such as taxes and interest, whose allowability does not depend upon the existence of a profit motive, are fully deductible even if they exceed the amount of the gross income derived from the activity. No deductions of this type are at issue in the instant case.

In order to prevail, petitioner must show that she pursued her artistic activities during the years in question with the objective of making a profit. Sec. 1.183–2(a), Income Tax Regs.; *Hirsch v. Commissioner*, 315 F.2d 731 (9th Cir. 1963); *Benz v. Commissioner*, 63 T.C. 375 (1974); *Bessenyey v. Commissioner*, 45 T.C. 261 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Petitioner's expectation of profit need not be reasonable, but she must establish that she continued her activities with a bona fide intention and expectation of making a profit. *Jasionowski v. Commissioner*, 66 T.C. 312 (1976); *Benz v. Commissioner, supra; Bessenyey v. Commissioner, supra.*

Since petitioner has introduced no evidence of net profit derived from her artistic activities for any of the years 1970 through 1975, the section 183(d) presumption cannot help her. Therefore, we must determine whether petitioner's activities were engaged in for profit by reference to all of the facts and circumstances of the instant case, including the relevant factors set forth in section 1.183–2(b),[4] Income Tax Regs., and giving greater weight to objective facts than to the taxpayer's mere statement of her intent. Sec. 1.183–2(a) and (b), Income Tax Regs.; *Jasionowski v. Commissioner, supra; Bessenyey v. Commissioner, supra.*

Viewing the record as a whole, we believe that petitioner had a bona fide intention to derive a profit from her artwork. There are admittedly factors in this case which indicate the absence of a profit motive. Petitioner has a history of losses, sec. 1.183–2(b)(6), Income Tax Regs.; she has never been dependent upon income from her artistic activities, sec. 1.183–2 (b)(8), Income Tax Regs.; and there is a significant recreational element inherent in her activities, sec. 1.183–2(b)(9), Income Tax Regs. However, such a history of losses is less persuasive in the art field than it might be in other fields because the archetypal "struggling artist" must first achieve

---

[4] Sec. 1.183–2. Activity not engaged in for profit defined.

(b) *Relevant factors.* In determining whether an activity is engaged in for profit, all facts and circumstances with respect to the activity are to be taken into account. No one factor is determinative in making this determination. In addition, it is not intended that only the factors described in this paragraph are to be taken into account in making the determination, or that a determination is to be made on the basis that the number of factors (whether or not listed in this paragraph) indicating a lack of profit objective exceeds the number of factors indicating a profit objective, or vice versa. * * *

public acclaim before her serious work will command a price sufficient to provide her with a profit.[5] The other factors indicating an absence of profit motive are persuasive but they are outweighed by the facts demonstrating that petitioner did engage in her artwork for profit.

While petitioner's artwork involved recreational and personal elements, her work did not stop at the creative stage but went into the marketing phase of the art business where the recreational element is minimal. Petitioner designed an art gallery and ran it for 1 year, she maintained a mailing list and sent announcements of her shows to persons on such list, she went to galleries in San Francisco and New York attempting to have her work shown, and she published a book. Furthermore, when petitioner saw that her paintings and other works were not selling well, she adopted new techniques, such as making posters and writing books, in an effort to make her work more available and more salable to the public. Although she did not keep a complete set of books pertaining to her artistic activities, petitioner kept all of the receipts for her art expenses and kept a journal recording what she sold and to whom. These facts indicate that petitioner carried on her artistic activities in a businesslike manner for profit. Sec. 1.183–2(b)(1), Income Tax Regs.

Moreover, petitioner studied art for 2½ years, she has taught at the college level and in workshops, articles about her have appeared in newspapers and magazines, her work is shown in commercial galleries at least once a year, some of her work has been sold, and she has been given a grant to make a film. Such facts indicate that petitioner has the requisite training to become a successful artist. Sec. 1.183–2(b)(2), Income Tax Regs. The fact that petitioner devotes a substantial amount of time to her artistic activities also indicates that she has a profit motive. Sec. 1.183–2(b)(3), Income Tax Regs.

It is abundantly clear from her testimony and from the objective evidence that petitioner is a most dedicated artist, craves personal recognition as an artist, and believes that selling her work for a profit represents the attainment of such recognition. Therefore, petitioner intends and expects to make

---

[5] de Grazia v. Commissioner, T.C. Memo. 1962–296.

a profit. For section 183 purposes, it seems to us irrelevant whether petitioner intends to make a profit because it symbolizes success in her chosen career or because it is the pathway to material wealth. In either case, the essential fact remains that petitioner does intend to make a profit from her artwork and she sincerely believes that if she continues to paint she will do so.

Petitioner has a relatively large inventory, she has considerable training, she devotes substantial time to her artwork, she has sold some paintings in the past, and is attempting to sell more. It is certainly conceivable, in our view, that she may someday sell enough of her paintings to enable her "to recoup the losses which have meanwhile been sustained in the intervening years." *Bessenyey v. Commissioner, supra* at 274. Accordingly, we hold that petitioner's artistic activities were engaged in for profit so that section 183 is inapplicable and petitioner is entitled to deductions for her art-related expenses, in the stipulated amounts, under sections 162 and 165.

*Decision will be entered under Rule 155.*